```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION
```

BRIAN PURCELL,                    §
                                  §
        Petitioner,               §
                                  §
VS.                               §    No. 4:21-CV-546-Y
                                  §
ERIC D. WILSON, Warden,           §
FMC-Fort Worth,                   §
                                  §
        Respondent.               §

OPINION AND ORDER DISMISSING PETITION

Before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner, Brian Purcell, against Eric D. Wilson, warden of FMC-Fort Worth, Respondent.

After having considered the petition and relief sought by Petitioner, the Court has concluded that the petition should be dismissed for failure to exhaust administrative remedies.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is serving a 60-month term of imprisonment for his 2018 conviction in this Court for possession of a firearm by a felon. (Resp't's App. 22–23, doc. 10.) In this petition, Petitioner seeks 866 days of prior custody credit toward his federal sentence for time spent in state custody and in federal custody under a writ of habeas corpus *ad prosequendum*. (Pet. 7–10, doc. 1.)

To establish the factual background of the case, the government has provided the declaration of Angela Kelly, a Correctional Program Specialist at the Designation and Sentence

Computation Center of the Federal Bureau of Prisons (BOP), providing (any spelling, punctuation, and/or grammatical errors are in the original):

> . . .
>
> 5. On November 2, 2016, Petitioner was arrested in Tarrant County, Texas, for the state offenses of Delivery/Manufacture of a Controlled Substance, Unlawful Possession of Firearm by Felon and Prohibited Weapons Knuckles. Petitioner was subsequently charged in the Criminal District Court No. 3 of Tarrant County, Texas, in Case Nos. 1475926D, 1475929D and 1475946, respectively.
>
> 6. At the time of the Petitioner's arrest, he was subject to a state term of parole in Case Nos. 1238101D, 1238103D and 1243931D, originally sentenced in the 396th Judicial District Court of Tarrant County, Texas.
>
> 7. The circumstances of the state arrest resulted in Petitioner's federal indictment in the United States District Court for the Northern District of Texas, Case No. 4-17CR-023-Y.
>
> 8. On February 21, 2017, Petitioner was temporarily transferred from the custody of Texas State authorities into U.S. Marshals custody, pursuant to a writ for prosecution, issued by the United States District Court for Northern District of Texas.
>
> 9. On March 15, 2018, the U.S. District Court for the Northern District of Texas sentenced Petitioner to a 60-month term of imprisonment for Felon in Possession of a Firearm in Case No. 4:17-CR-00023-Y(l). As reflected in the Judgment, the Court stipulated that the sentence shall run concurrently to any sentence that may be imposed in Case Nos. 1475926D and 1475929D in the Criminal District Court No. 3, Tarrant County, Texas; but consecutively to any sentences that may be imposed in Case Nos. 1475946 in Criminal District Court No. 3, Tarrant County, Texas, and in Case Nos. 1238101D, 1238103D and 1243931D in the 396th Judicial District Court, Tarrant County, Texas.

10. On March 29, 2018, Petitioner was returned to state custody, via writ return, and a federal detainer was lodged with state authorities for the 60-month federal term.

11. On July 10, 2018, Petitioner was sentenced in the Criminal District Court No. 3, Tarrant County, Texas, to a 5-year term of imprisonment, concurrent, in Case Nos. 1475926D and 1475929D. The state court credited the 5-year term for time spent in state presentence custody from November 2, 2016 to July 10, 2018.

12. On that same day, Case No. 1475946 was dismissed in the County Criminal Court No. 3, of Tarrant County, Texas.

13. Petitioner's term of state parole was revoked on June 28, 2019, in Case Nos. 1238101D, 1238103D and 1243931D.

14. On November 18, 2019, Petitioner was released from the Texas Department of Criminal Justice (TDCJ), via parole, to the exclusive custody of federal authorities.

15. Title 18 United States Code § 3585(a), as referenced in Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), states in part, "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served."

16. According to information received from the TDCJ, Petitioner's parole revocation terms in Case Nos. 1238101D, 1238103D and 1243931D are due to expire on November 27, 2024. The 5-year terms in Case Nos. 1475926D and 1475929D are due to expire November 2, 2021. However, Petitioner was paroled in all 5 cases on November 18, 2019.

17. Petitioner's sentence has been computed as commencing on November 18, 2019, the date state authorities released him, via parole, to the exclusive custody of federal authorities.

3

18. Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), and Title 18 U.S.C. § 3585(b), preclude the application of credit for time that has already been credited against another sentence.

19. State records reflect Petitioner received state presentence credit for time spent in the primary custody of state authorities from November 2, 2016 (the date of Petitioner's state arrest) to July 10, 2018 (the state imposition date). Additionally, Petitioner received credit toward the parole revocation from February 22, 2017 (the date parole warrant was executed) to March 1, 2017, (the date parole warrant was withdrawn). All of the time Petitioner spent in the primary custody of state authorities from November 2, 2016 to November 18, 2019, was credited against his state sentences; therefore, none of the time Petitioner spent in the primary custody of state authorities can be credited toward his federal sentence pursuant to 18 U.S.C. § 3585(b).

20. As previously stated, the 5-year terms in Case Nos. 1475926D and 1475929D are due to expire on November 2, 2021; however, the 10-year sentences (parole revocation term) in Case Nos. 1238101D, 1238103D, and 1243931D, will not expire until November 27, 2024, [Petitioner]'s maximum sentence date. In that the parole revocation term in Case Nos. 1238101D, 1238103D, and 1243931D is operating concurrently with the 5-year terms in Case Nos. 1475926D and 1475929D, and the parole revocation term did not expire prior to [Petitioner]'s release to parole on November 18, 2019, the Bureau is unable to comply with the Court's order in its entirety. Specifically, it is not possible for the federal sentence to run both concurrently with the sentences in Case Nos. 1475926D and 1475929D, and consecutive to the sentences in Case Nos. 1238101D, 1238103D, and 1243931D. In an effort to comply, in part, with the Court's order, the Bureau has computed the 60-month sentence as commencing on November 18, 2019. In doing so, the federal sentence is operating consecutive to all of the aforementioned state sentences.

21. As the Bureau cannot fully comply with the Court's

        order, and the Court has the authority to determine consecutive or concurrent service of the federal and state terms, the sentencing Court was contacted in a letter for its position regarding the federal and state sentences.

22. The Court responded agreeing with the BOP's calculation of Petitioner's sentence.

23. If he receives all projected good conduct time, it is expected that [Petitioner] will be released from BOP custody on February 21 , 2024.

(Resp't's App. 1-5, doc. 10 (footnote and record citations omitted).)

## II.  DISCUSSION

Respondent asserts *inter alia* that the petition should be dismissed because Petitioner has failed to exhaust his administrative remedies. (Resp't's Resp. 1, 5-7, doc. 9.) Federal prisoners must exhaust administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). The administrative-remedy procedure for federal prisoners is published at 28 C.F.R. §§ 542.10–542.18. *See United States v. Wilson,* 503 U.S. 329, 335 (1992). Under this administrative procedure, if informal resolution fails, the inmate must pursue a three-level process within the prescribed time intervals. Typically, the inmate must formally appeal to the warden, via a Request for Administrative Remedy, commonly referred to as a BP-9; then to the regional director, via

5

a form commonly referred to as a BP-10; and finally to the Office of General Counsel, via a form commonly referred to as a BP-11. Administrative remedies have not been exhausted until the inmate's claim has been filed and then subsequently denied at all levels. *See* 28 C.F.R. § 542.15; *Rourke v. Thompson,* 11 F.3d 47, 49 (5th Cir. 1993).

Judicial enforcement of the administrative-exhaustion requirement promotes judicial efficiency and conserves scarce judicial resources, allows the agency time to develop the necessary factual background and apply its specific expertise, and discourages the deliberate flouting of the administrative process. *McKart v. United States,* 395 U.S. 185, 193–95 (1969). Therefore, exceptions to the exhaustion requirement apply only in "extraordinary circumstances" when administrative remedies are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller,* 11 F.3d at 62. The petitioner bears the burden of demonstrating such circumstances. *Id.*

Petitioner acknowledges that he failed to complete the third level of the process but asserts that (any spelling, grammatical, and/or punctuation errors are in the original)

> [t]he B.O.P replied outside of their set deadline forcing the movant to go forward with his motion for relief. The B.O.P response to movants BP10 was received over 14 days late. It was due by Dec 18, 2020 but not received until Dec 2 [sic], 2020. There for movant was not able to get a BP11 without a response from the BP10, and had he been able to, it would have been received out of time, there

6

>  for the movant had no choice but to proceed forward with his motion.

(Pet'r's Reply 2, doc. 11.)

Respondent provides persuasive argument discrediting Petitioner's assertion. Respondent explains in his supplemental response:

> Petitioner filed administrative remedy number 1041925-F1 with the Warden of FCI El Reno (where he was then housed) on August 8, 2020, requesting credit for time served on his state sentence. On August 31, 2020, the Warden signed an informational administrative remedy response. Petitioner filed an appeal of the Warden's response to the South Central Regional Office on September 14, 2020. That appeal was rejected because he did not sign and date the appeal. Petitioner resubmitted his appeal on October 19, 2020 and a response was due on or before December 18, 2020. The remedy response was signed on December 18, 2020. Presumably it would have been mailed after that and received at El Reno, where Petitioner was housed sometime after December 18, 2020. The institution didn't date stamp the remedy response when it was received so what day it arrived or what day the Petitioner was provided the response is unknown but it would have been after December 18, 2020.
>
> If Petitioner received the response late, the program statement still allows him to file an appeal to Central Office, which he did not do. Additionally, if an inmate does not receive a response in the time allotted for reply, including extension, the inmate may consider the lack of response a denial at that level. Specifically, the Program statement says:
>
> 542.15 Appeals:
>
> An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended.
>
> 542. 18 Response Time:

7

> If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.
>
> Petitioner needs to file an appeal at the Regional level and he has thirty days from the date of the Regional response to file an appeal at Central Office. Even assuming he received it 14 days late as he claims, he still had time to file an appeal to Central Office and he could have requested supporting documentation from his unit team that the response was received late. Petitioner never attempted to file at Central Office, instead filing his petition in this Court on April 15, 2021. Petitioner did not exhaust his administrative remedies and his petition should be dismissed.

(Resp't's Supp. Resp. 1-3, doc. 14 (record citations omitted).)

Petitioner has failed to demonstrate "extraordinary circumstances" to excuse his failure to meet the exhaustion requirement—*e.g.*, that the administrative-remedy process was rendered unavailable by the BOP's late notice or that any attempt to file a BP-11 would have been futile.

For the reasons discussed, the Court DISMISSES Petitioner's petition for a writ of habeas corpus, without prejudice, because he failed to exhaust his administrate remedies.

SIGNED September 24, 2021.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

8